40 F.3d 1250
 33 U.S.P.Q.2d 1953
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Jack H. NUNBERG, Annie C.Y. Chang, Stanley N. Cohen
and Robert T. Schimke.
 No. 94-1024.
 United States Court of Appeals, Federal Circuit.
 Oct. 25, 1994.
 
 Before MICHEL, PLAGER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 DECISION
 
 1
 The Board of Patent Appeals and Interferences rejected U.S. Patent Application Serial No. 07/324,395, "Protein Production at Synthetic Start Site." In re Nunberg, No. 93-1765 (Bd.Pat.Apps. & Ints. July 27, 1993). The Board found that the prior art suggested practice of the claimed process. Applicants Jack H. Nunberg, Annie C.Y. Chang, Stanley N. Cohen, and Robert T. Schimke (Nunberg) appeal. This court affirms.
 
 I.
 
 2
 Nunberg claims methods of producing and using proteins in a microorganism. In In re O'Farrell, 853 F.2d 894, 895-99, 7 USPQ2d 1673, 1674-77 (Fed.Cir.1988), this court explained much of the biotechnology involved in this appeal.
 
 
 3
 Nunberg transforms a microorganism host with a cloning vector containing a foreign gene that encodes a particular protein. The foreign gene is expressed in the transformed host, which thereafter produces that protein.
 
 
 4
 The protein may be desirable in itself. If the protein is an enzyme, it may catalyze a reaction in the microorganism to produce a desired product.
 
 Nunberg's claims state:
 
 5
 1. A method for producing a non-fused foreign mammalian protein in a unicellular microorganism, said method comprising:
 
 
 6
 growing a transformant comprising a gene encoding a mammalian protein under the transcriptional and translational regulation of transcriptional and translational regulatory initiation and termination regions functional in said unicellular microorganism host, whereby said mammalian protein is expressed;
 
 
 7
 wherein said transformant is produced by transforming said unicellular microorganism with a gene resulting from combining said gene with said transcriptional and translational regulatory regions.
 
 
 8
 2. A method according to Claim 1, wherein said gene is inserted into a structural gene endogenous to said unicellular microorganism joined to the 3' terminus of a ribosomal binding site.
 
 
 9
 3. A method according to Claim 1, wherein said transformant is produced by transforming said unicellular microorganism with a vector comprising said gene and said transcriptional and translational regulatory regions and a structural gene which provides for selection, and
 
 
 10
 selecting transformants comprising said gene which provides for selection.
 
 
 11
 4. A method according to Claim 3, wherein said unicellular microorganism is a bacterium.
 
 
 12
 5. A method according to Claim 4, where said mammalian gene encodes a functional enzyme.
 
 
 13
 6. A method according to Claim 1, wherein said unicellular microorganism is a bacterium.
 
 
 14
 7. A method for microbiologically producing an organic nonpolypeptide product in a microbiological host, which comprises:
 
 
 15
 transforming said microbiological host with a vector containing a gene expressing a foreign eukaryotic enzyme which chemically modifies a compound to said product and is produced as a non-fused product, wherein said vector originated by the insertion of the gene downstream from a ribosomal binding site;
 
 
 16
 growing said host, wherein said enzyme is expressed in said host and said compound is enzymatically transformed by said enzyme in said host to produce said product; and
 
 
 17
 isolating said product from said host.
 
 
 18
 8. A method according to Claim 7, wherein said compound is a metabolite native to said host.
 
 
 19
 9. A method according to Claim 7, wherein said enzyme is dihydrofolate reductase and said product is tetrahydrofolate.
 
 
 20
 Claim 1 specifies the production of free mammalian protein within the microorganism host. The user transforms the host with a recombinant DNA plasmid vector, which places the mammalian gene under the control of the host's transcriptional and translational mechanisms. Transcriptional and translational regulatory regions control transcription of DNA to produce messenger RNA and translation of messenger RNA to produce the mammalian protein.
 
 
 21
 The narrowest claims depending from claim 1 are claims 2 and 5. Claim 2 recites inserting the gene encoding the mammalian protein into a gene of the microorganism. The user joins the mammalian protein gene to the 3' or downstream end of a ribosomal binding site. Claim 5 addresses expression of a functional enzyme in bacteria, using a vector that includes a gene allowing for selection, or identification. This increases efficiency by providing a way to select the transformed bacteria.
 
 
 22
 Claim 7 addresses production of a non-polypeptide product in a microbiological host. The product results from the chemical modification of a compound by a eukaryotic enzyme foreign to the host. Eukaryotes are organisms, such as mammals, whose cells have nuclei. Claim 7 recites inserting a gene encoding the eukaryotic enzyme into DNA that includes a ribosomal bonding site of the host microorganism. The user inserts the gene downstream from the ribosomal bonding site. The user transforms the host with the resulting vector, and then grows the host. The host expresses the enzyme, which processes the compound into the desired product. Finally, the user harvests the product by isolating it from the host.
 
 
 23
 Claim 8 applies claim 7 to produce products from compounds that are native to the host. Claim 9 applies claim 7 to produce tetrahydrofolate using the mammalian enzyme dihydrofolate reductase (dhfr).
 
 
 24
 The Patent and Trademark Office (PTO) rejected all of Nunberg's claims as obvious over a combination of three prior art references:
 
 
 25
 (1) Keith Backman and Mark Ptashne, "Maximizing Gene Expression on a Plasmid Using Recombination in Vitro," 13 Cell 65 (1978) (Backman);
 
 
 26
 (2) U.S. Patent No. 4,237,224 to Cohen et al., "Process for Producing Biologically Functional Molecular Chimeras," issued December 2, 1980 on an application filed on January 4, 1979 (Cohen); and
 
 
 27
 (3) Frederick W. Alt et al., "Selective Multiplication of Dihydrofolate Reductase Genes in Methotrexate-resistant Variants of Cultured Murine Cells," 253 J.Biol.Chem. 1357 (1978) (Alt).
 
 
 28
 The Board affirmed the rejection. Nunberg appeals.
 
 II.
 
 29
 Backman, the primary reference, teaches a process for expressing a foreign protein, [symbol] repressor, in the bacterium Escherichia coli. Backman constructed a transformed DNA plasmid vector containing the [symbol] repressor gene inserted downstream from a hybrid ribosomal binding site. To facilitate expression of the [symbol] repressor gene in E. coli, the vector also contained transcriptional and translational regulatory regions functional in E. coli. When Backman inserted the vector into the bacterial host, the [symbol] repressor gene was expressed and non-fused protein was produced.
 
 
 30
 While the gene Backman inserted was from a non-eukaryote source, Backman concluded that his method would express eukaryotic proteins as well:
 
 
 31
 [O]ur method should be applicable to eliciting efficient expression of genes from any organism in E. coli.
 
 
 32
 (Emphasis added.)
 
 
 33
 Cohen teaches expression of a eukaryotic gene in E. coli transformed by DNA vectors. Cohen expressed eukaryotic protein fused with protein naturally produced by the bacterium. Cohen states that eukaryotic DNA "can be introduced into a bacterial cell and the cell becomes capable of its transcription, translation, and production of a functional gene product." Cohen specifically suggests that his techniques could express mammalian proteins and enzymes. Cohen prefers using vectors that have properties, such as resistance to growth-inhibiting materials, that facilitate identifying the transformed bacteria. Cohen uses these properties to select the transformed cells.
 
 
 34
 Alt describes the preparation of DNA encoding dhfr, the specific enzyme Nunberg recites in claim 9.
 
 III.
 
 35
 When the prior art contains a suggestion to practice the claimed invention, that suggestion need not guarantee success. O'Farrell, 853 F.2d at 903. Rather, "[f]or obviousness under Sec. 103, all that is required is a reasonable expectation of success." Id. at 904.
 
 
 36
 The Board found that the cited references provide enough information to suggest that one of skill in the art could reasonably expect the success of the claimed process. The Board relied on Backman's explicit suggestion that the process should result in efficient expression of genes from any organism. The Board also relied on Cohen's teaching that eukaryotic genes can be expressed in bacteria. The Board observed that Cohen reiterates Backman's suggestion about expression of genes from any organism, including eukaryotes. As to expression of dhfr, the subject of Nunberg claim 9, the Board noted that Alt teaches how to obtain the necessary DNA encoding it.
 
 
 37
 This case is similar to O'Farrell. O'Farrell claimed expression of a foreign protein in bacteria. O'Farrell, 853 F.2d at 895. The prior art taught transforming the bacteria with a gene encoding ribosomal RNA. Id. at 900. The prior art also predicted that substituting a gene encoding a protein would result in extensive protein production. Id. at 901. This court found that the prior art suggested the substitution with a reasonable expectation of success. Id. at 901, 904. The same holds true for substitution of Nunberg's eukaryotic DNA for Backman's prokaryotic DNA.
 
 
 38
 The Board's reliance on Backman's suggestion distinguishes this case from cases lacking an explicit suggestion of the claimed process. For example, in In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed.Cir.1991), this court reversed the obviousness rejection of claims not suggested by the prior art. Vaeck claimed expression of an insecticidal protein in cyanobacteria. Id. at 489. The prior art taught only expression of an antibiotic enzyme. Id. at 490-91 & n. 7. The prior art did not suggest substituting the insecticide gene for the antibiotic gene. Id. at 493.
 
 
 39
 This case is very different. Backman teaches that "our method should be applicable" as Nunberg claims. Backman thus makes an explicit suggestion to practice the claimed process. Cf. O'Farrell, 853 F.2d at 901 ("the prior art explicitly suggested the substitution that is the difference between the claimed invention and the prior art").
 
 
 40
 Moreover the inherent uncertainties of biotechnological arts do not preclude a finding of obviousness. In O'Farrell, this court acknowledged but was not persuaded by applicant's assertion of "significant unpredictability in the field of molecular biology." Id. at 902. This court observed that "[o]bviousness does not require absolute predictability of success." Id. at 903. See also In re Eli Lilly & Co., 902 F.2d 943, 948, 14 USPQ2d 1741, 1745-46 (Fed.Cir.1990) ("Although we recognize and give weight to the unpredictability of biological properties, in [this] case the prior art teaches the claimed use with specificity.").
 
 IV.
 
 41
 The PTO must also give weight to objective evidence of non-obviousness during patent prosecution. In re Sernaker, 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983).
 
 
 42
 The Board considered a declaration submitted by Cohen, one of the applicants, and references submitted with the declaration. Cohen avers that others in the field did not follow Backman, and used the claimed process only after Nunberg published his results.
 
 
 43
 The Board discounted this evidence. The Board observed that two of the references, later reports by Backman's group, disclose using Backman to express non-fused eukaryotic protein in E. coli. Backman's group submitted the reports for publication approximately two years after publication of the prior art Backman reference. The Board attributed this gap to the delays inherent in preparing articles for publication. The Board concluded that the reports militate against finding that the objective evidence negates obviousness. This court agrees.
 
 CONCLUSION
 
 44
 The prior art suggested practice of Nunberg's claimed invention with a reasonable expectation of success. Furthermore, the proffered objective evidence of nonobviousness does not override the similarities between the claimed invention and the prior art. The Board correctly affirmed the rejection of all claims of Nunberg's application.